## CAMPBELL v. AMERICAN FABRICS CO.
### No. 1412.

District Court, E. D. New York.

Jan. 20, 1942.

See, also, 1 F.R.D. 502.

Geist & Netter, of New York City (Morris A. Marks, of New York City, of counsel), for plaintiff.

Frederick S. Duncan, of New York City, for defendant.

CAMPBELL, District Judge.

This is a motion for an order pursuant to Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, compelling the defendant, American Fabrics Company, to permit the inspection and copying by or on behalf of the plaintiff, Dudley D. Campbell, of the books of account and records of the American Fabrics Company, which constitute and contain evidence material to the matter involved in the above captioned action and which are in the possession, custody and control of the American Fabrics Company the production and examination of which have been refused to the plaintiff and to its accountants.

There are but two remaining causes of action in this case, the first having to do with an alleged contract for the purchase of certain stock, is not involved in this notice, the second is based upon the removal of the plaintiff as president and general manager of the mill and precluding him from participating in its management by the defendant, a holder of 51% of the stock through the Board of Directors of the Woodstock Spinning Corporation elected by and representing it, the plaintiff being the holder of 49% of the stock.

The complaint then alleges:

"Fifty-First: That by reason of the removal of plaintiff from the office of president and general manager of the Woodstock Spinning Corporation, and by reason of the refusal on the part of defendant, The American Fabrics Company, to permit plaintiff to operate and manage the mill, plaintiff has been totally unable to use his business judgment, experience and ability to the best advantage of the Woodstock Spinning Corporation, and said corporation has been unable to earn the profits which capable, efficient, economic and industrious management and operation would have earned.

"Fifty-Second: That by reason of said premises and the aforesaid acts and conduct of The American Fabrics Company, plaintiff has been damaged in the sum of $125,000, representing the loss of profits which plaintiff anticipates he would have earned and received in accordance with the representations made by said defendant, as heretofore alleged, had plaintiff been permitted to continue in active charge of the mill and its operations for at least the period of five years in accordance with his agreement with said defendant of October 17th, 1938, and affirmed and repeated at the time of the execution of the contract marked Exhibit 'A' herein, and the simultaneous execution by defendant, The American Fabrics Company, of its agreement to purchase plaintiff's stock, as alleged in paragraph 'Thirty-Seventh' hereunder."

It will be seen that the damages sought are for plaintiff's exclusion from the management of the mill, and not because of the defendant's deducting from the selling price of the product of the mill by the defendant of its selling and departmental expenses pursuant to an agreement between it and the Woodstock Spinning Corporation.

█ As the only object of the proposed discovery is for the purpose of ascertaining from the books of accounts and records of the defendant data pertaining to certain items of cost and expense alleged by the defendant to be allowable to the cost of handling and the sale of the goods produced by the Woodstock Spinning Corporation and sold by the defendant and to the collection of the accounts receivable representing the sales of such goods, the items sought to be extracted from such books are immaterial and irrelevant to the issues of said cause of action, and should not be allowed.

There are other actions pending between the same parties in one of which in the State of Alabama the discovery here sought would be material and relevant, and it is in that action, not in this, that such discovery should be sought.

Plainiff further seeks to extend this discovery to make it referable to the counterclaim interposed by the defendant in the action at bar.

The counterclaim alleges not only that the plaintiff misrepresented his experience and ability in the operation and supervision of cotton mills, but also that he made the following misrepresentations, which are likewise false: "that said mill was fully and adequately equipped for the spinning of cotton yarn and the manufacture and production of cotton fabrics of high quality; that the machinery and equipment of said mill were sufficiently modern, up-to-date and in a proper state of repair to enable said mill to be operated in competition with other cotton mills making the same type of material; that the mill structure itself was sound and in a proper state of repair; that there was no indebtedness in respect of the said mill property, except the said so-called lien or mortgage of $60,000; and that the mill under the supervision and management

of the plaintiff was capable of producing cotton fabrics of high quality."

The counterclaim further alleges that in reliance upon such misrepresentations, the plaintiff, among other things, advanced various sums of money, and entered into both the inter-company contract, and an instrument which plaintiff alleges (in his first cause of action) is an outright contract on the part of defendant to purchase 2,500 of the plaintiff's 4,900 shares of stock in the Woodstock Spinning Corporation at $62,500. The defendant claims that it thereby suffered damages in the amount of $176,266.76. The defendant lists 13 items, which constitutes the counterclaim, as follows:

1. October 17, 1938 to December 31, 1939; (after audit) Additional billing by Woodstock to absorb excess cost $43,875.45
2. Woodstock loss from operations — 17,039.64
3. Partial repairs to Bldgs. (Termite damage) — 5,287.70
4. Partial replacement of misrepresented Machinery & Equipment, etc. — 18,548.81
5. Estimated additional repairs and replacements necessary to Buildings, Machinery and Equipment, etc. — 50,000.00
6. Estimated loss on Woodstock faulty goods and over production still on hand September 30, 1940 (10% of AFC purchases) — 9,946.06
7. AFC Extraordinary Administration and Traveling Expenses — 3,094.02
8. January 1, 1940 to September 30, 1940: (before audit) Additional billing by Woodstock, Excess Cost, to 8/31/40 — 12,447.09
9. Additional billing by Woodstock, Excess Cost, September, 1940 (Est) — 1,500.00
10. Woodstock loss from operations 8/31/40 — 8,010.38
11. Woodstock loss from operations September, 1940 (Est) — 1,000.00
12. Further partial replacement of misrepresented Machinery & Equipment to September 30, 1940 — 1,517.61
13. Back taxes—Estimate — 4,000.00

Items 2, 6, 7, 10 and 11 are withdrawn from the counterclaim, and the remaining items 1, 3, 4, 5, 8, 9, 12 and 13 refer solely either to the physical conditions of the mill, or to the manufacturing operations there conducted, or to the taxes due upon the mill itself, and do not present any possible basis for the discovery sought by the plaintiff.

 Plaintiff has had made accessible to him the books of the Woodstock Spinning Corporation, and whatever argument there might have been in plaintiff's favor, if any, for a discovery as to items 2, 6, 7, 10 and 11, had they not been withdrawn from the counterclaim, there certainly is no reason to inspect defendant's books as to matters peculiar to the Woodstock Spinning Corporation, and entered on its books, which constitute items 1, 3, 4, 5, 8, 9, 12 and 13.

The motion is denied.